UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:21-CV-00048-GNS

REBECCA ENGLAND																		PLAINTIFF

v.

DEPUTY KENNY PERKINS, et al.																	DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Defendants' Motions to Dismiss (DN 9, 11). The motions are ripe for adjudication. For the reasons stated below, the motions are **GRANTED IN PART** and **DENIED IN PART**.

**I.			BACKGROUND**

Plaintiff Rebecca England ("England") alleges federal and state law claims against members of the Russell County Sheriff's Department ("RCSD"), Deputy Kenny Perkins ("Perkins"), Deputy Jerry Melton ("Melton"), Deputy Clint Pace ("Pace"), Deputy Ronnie Golden ("Golden"), and Sheriff Derek Polston ("Polston"), collectively ("Russell County Defendants"). She also named as Defendants the Kentucky State Police ("KSP"), Trooper Billy Begley ("Begley"), Trooper Zachary Scott ("Scott"), and Trooper Jacob Harper ("Harper"). Melton, Pace, Golden, and Polston (collectively "Sheriff's Dep't") moved to dismiss England's claims pursuant to Fed. R. Civ. P. 12(b)(6) (DN 9), and Perkins moved separately to dismiss as well. (DN 11).

England alleges that several incidents involving law enforcement officers form the basis of her claims under federal and state law occurring between June 2019, and January 2021. The first incident (denominated "Incident I") occurred on June 16, 2019, when England was a passenger in

1

a vehicle she owned and was stopped at a roadblock by the KSP and charged with driving under the influence. (Compl. ¶¶ 17-20, DN 1). The charges were later dismissed. (Compl. ¶ 21).

The second incident ("Incident II") allegedly occurred on December 19, 2019, when England claims she was awakened by six RCSD deputies in her home. (Compl. ¶¶ 23-26). England was handcuffed and injured her ankle as she was removed from her residence while officers searched her house. (Compl. ¶¶ 25-26).

Incident III is alleged to have occurred on March 17, 2020, when Perkins stopped England's car while she was driving and instructed her to exit the vehicle after looking at her driver's license. (Compl. ¶¶ 33-34). England claims that as she was getting her phone to call for assistance she was removed from the vehicle and handcuffed, causing pain when her arm was twisted. (Compl. ¶¶ 36-37). England asserts that Perkins pulled her towards him and pressed his genitals against her while she attempted to get away. (Compl. ¶¶ 38-39). Perkins allegedly threw England's phone to the ground, told her that he would tase her, and she would "eat the pavement." (Compl. ¶ 39-41). After a motorist pulled in behind Perkins' vehicle, Perkins handcuffed England and threw her in a ditch. (Compl. ¶ 42). Perkins then informed England she was under arrest for resisting arrest and was later informed she was being charged with drunk driving. (Compl. ¶¶ 43-44). She was then transported to the Russell County Detention Center where England informed Deputy Jailer Sandy Johnson that Perkins touched her inappropriately. (Compl. ¶¶ 45-46). Melton interviewed England at the RCSD, stating he was the officer in charge of internal affairs. and allegedly threatened England with perjury charges if she made a formal complaint against Perkins. (Compl. ¶¶ 47-50). England gave Melton a formal complaint but does not know if it was ever filed or acted upon. (Compl. ¶¶ 51-52).

Incident IV involved England's son whom she claims was operating a vehicle with two juvenile males on October 25, 2020, when Pace pulled behind the vehicle and activated his lights and siren. (Compl. ¶ 54). Pace activated his flashers, causing England's son to slow his vehicle and search for a safe place to pull over. (Compl. ¶¶ 55-56). After England's son pulled into a parking lot, Pace allegedly opened the driver's side door and removed him from the car, placing him on the pavement while pointing a gun at his head. (Compl. ¶ 58). England arrived at the scene and saw Pace pointing his gun at her son and the passengers. (Compl. ¶¶ 59-60). This incident was not reported to either of the officers' superiors, nor was a use of force report filed. (Compl. ¶ 63).

Finally, Incident V allegedly occurred when England was fishing in Russell County on January 31, 2021. (Compl. ¶ 65). Perkins and Golden arrived and asked England for her fishing license. (Compl. ¶ 66). England informed the officers that she needed to drive to "Rockhouse" to pick up her son from kayaking. (Compl. ¶¶ 67-68). England claims she heard Perkins tell Golden that England was not going home that day. (Compl. ¶ 69). Perkins made reference to materials in England's car pertaining to this action and another against Perkins. (Compl. ¶ 70). Upon arrival at Rockhouse, England saw a KSP vehicle pull into the parking area followed by Perkins and Golden. (Compl. ¶ 73). After approaching England, KSP Harper rubbed his hands on England without her consent. (Compl. ¶ 77). The following day, England and her employer left the employer's office to make a house call on a client and were followed by two RCSD vehicles for five miles before the vehicles turned around. (Compl. ¶ 79).

England filed the instant action asserting: (i) claims under 42 U.S.C. § 1983 for excessive force, an illegal search and search, cruel and unusual punishment, and a *Monell* claim; and (ii) state law claims for assault, battery, false arrest, false imprisonment, and intentional and negligent

emotional distress. (Compl. ¶¶ 80-128). England requested declaratory relief and punitive damages. (Compl. 21-22).

## II. STANDARD OF REVIEW

A complaint is subject to dismissal if it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When considering a motion to dismiss under Rule 12(b)(6), the Court must construe the complaint in a light most favorable to the nonmoving party, accepting "as true all factual allegations and permissible inferences therein." *Gazette v. City of Pontiac*, 41 F.3d 1061, 1064 (6th Cir. 1994) (citing *Westlake v. Lucas*, 537 F.2d 857, 858 (6th Cir. 1976)). The nonmoving party, however, must plead more than bare legal conclusions. *See Lillard v. Shelby Cnty. Bd. of Educ.*, 76 F.3d 716, 726 (6th Cir. 1996). In order to survive a 12(b)(6) motion, "[the] complaint must contain (1) 'enough facts to state a claim to relief that is plausible,' (2) more than 'a formulaic recitation of a cause of action's elements,' and (3) allegations that suggest a 'right to relief above a speculative level.'" *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The pleading need not contain detailed factual allegations, but the nonmoving party must allege facts that, when "accepted as true . . . 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (citation omitted).

## III. JURISDICTION

Jurisdiction for the federal law claims is based on federal question jurisdiction pursuant to 28 U.S.C. § 1331. This Court has jurisdiction over the state law claims through supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a).

## IV. DISCUSSION

### A. England's Failure to Timely Serve Defendant Perkins

Fed. R. Civ. P. 4(m) mandates service on defendants in a lawsuit within 90 days of the filing of the Complaint. A plaintiff must show good cause for the failure to serve timely. *Id.* In this instance, England filed suit on March 17, 2021, but did not serve Perkins until June 30, 2021, two weeks beyond the ninety-day period. (Summons, DN 12).

The history of Fed. R. Civ. P. 4 "refer[s] to 'diligent' plaintiffs and 'reasonable efforts to effect service.'" *Boykin v. Com. Union Bank of Union City*, 109 F.R.D. 344, 348 (W.D. Tenn. 1986) (citation omitted). The Sixth Circuit describes:

> Rule 4(m) requires the district court to undertake a two-part analysis. First, the court must determine whether the plaintiff has shown good cause for the failure to effect service. If he has, then "the court *shall* extend the time for service for an appropriate period." Fed. R. Civ. P. 4(m) (emphasis added). Second, if the plaintiff has not shown good cause, the court must either (1) dismiss the action or (2) direct that service be effected within a specified time. In other words, the court has discretion to permit late service even absent a showing of good cause.

*Stewart v. Tenn. Valley Auth.*, 238 F.3d 424, 2000 WL 1785749, at *1 (6th Cir. Nov. 21, 2000) (internal citation omitted) (citation omitted). "Good cause requires at least excusable neglect." *Id.* "Ultimately, it is within the Court's discretion to decide whether the case goes forward." *Dunham-Kiely v. United States*, No. 3:08-CV-114, 2010 WL 1882119, at *3 (E.D. Tenn. May 11, 2010).

#### 1. *Good Cause*

In her response to Perkins' motion, England filed an affidavit from Dillard Justin Lee ("Lee") explaining the issues with perfecting service on Perkins. (Pl.'s Resp. Defs.' Mots. Dismiss 2, DN 19). As Defendants point out, on a motion pursuant to Fed. R. Civ. P. 12(b)(6), the court, "may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are

referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (citation omitted). The Court will not, therefore, consider Lee's affidavit attached to England's response at this stage, which was otherwise not explained. (Pl.'s Resp. Defs.' Mots. Dismiss 5). Since England made no other argument in her response, she has failed to show good cause as to why service was not effected in a timely manner.

### 2. *Discretion*

In light of her failure to show good cause, the Court will consider whether the untimely service should nevertheless be excused. *Shropshire v. Maucere*, No. 1:19-CV-123, 2020 WL 6206009, at *4 (E.D. Tenn. Oct. 22, 2020). The Sixth Circuit has recognized that courts may exercise discretion in excusing untimely service. *Stewart*, 2000 WL 1785749, at *1. In making that determination, courts consider:

> (1)  A significant extension of time was required;
> (2)  An extension of time would prejudice the defendant other than the inherent 'prejudice' in having to defend the suit;
> (3)  The defendant had actual notice of the lawsuit;
> (4)  A dismissal without prejudice would substantially prejudice the plaintiff; i.e., would his lawsuit be time-barred; and
> (5)  The plaintiff had made any good faith efforts at effecting proper service of process.

*Dunham-Kiely*, 2010 WL 1882119, at *5 (citation omitted); *see also Warrior Imps., Inc. v. 2 Crave*, 317 F.R.D. 66, 70 (N.D. Ohio 2016); *Stafford v. Franklin Cnty.*, No. 2:04-CV-178, 2005 WL 1523369, at *3 (S.D. Ohio June 28, 2005). In *Warrior Imports*, the plaintiff waited to effect service until 15 months after filing the complaint and after the court had entered a show cause order. *Warrior Imps.*, 317 F.R.D. at 70. In *Dunham-Kiely v. United States*, the defendant was not served for 247 days after the complaint was filed. *Dunham-Kiely*, 2010 WL 1882119, at *5. Both

courts found the passage of time favored dismissal. In contrast, England's complaint was filed March 17, 2021, and Perkins was served on June 30, 2021. (Summons 1, DN 12). Service was made a mere 15 days late, which weighs in favor of excusing the default.

Regarding prejudice to the Defendant, such prejudice "contemplates loss of evidence, unavailability or other material alteration caused by the delay that would prevent the [defendant] from presenting his case." *Dunham-Kiely*, 2010 WL 1882119, at *5 (citation omitted). Perkins was served two weeks past the deadline and has made no argument that he would be prejudiced in defending against the suit. (Perkins' Mem. Supp. Mot. Dismiss 5-20, DN 11-1). This factor weighs in favor of England.

Notice to Perkins within the 90-day period also favors England. As a sister court wrote:

> It is undisputed that the defendants' attorney received a copy of the Complaint in December 2019. While actual notice of the suit is not a substitute for service, this factor weighs in favor of affording the plaintiffs additional time to effect service. Additionally, granting an extension of time would promote the goal of resolving the dispute on the merits.

*Charles v. Lee Cnty.*, No. CV 5:19-479-DCR, 2020 WL 1906890, at *3 (E.D. Ky. Apr. 17, 2020) (internal citation omitted). In this instance, the same attorney represents all of the RCSD personnel, each of whom is named in the Complaint. It seems highly likely that Perkins was aware of the suit, since his fellow deputies and employer had been served and were represented by the same attorney who now represents Perkins.

Even a dismissal without prejudice would harm England, which weighs most heavily in favor of allowing the suit to continue against Perkins. "The Advisory Committee Note to Rule 4(m) states that extension of time may be justified 'if the applicable statute of limitations would bar the refiled action.' Dismissing this lawsuit would unfairly penalize plaintiff for the negligence of her attorney." *Dunham-Kiely*, 2010 WL 1882119, at *6. As discussed below, dismissing the

claims asserted against Perkins due to untimely service would result in some of the claims being time-barred, functioning as a dismissal with prejudice. Accordingly, this factor weighs in favor of excusing the late service.

Finally, the fifth factor, whether the plaintiff made a good faith effort to serve, is neutral, favoring neither England nor Perkins'. Without the ability to consider Lee's affidavit, there is no evidence of what efforts England made to have Perkins served within the 90-day time-period. Perkins was served only two weeks past the deadline and the other defendants were served within the requisite period, demonstrating that England was attempting to locate and serve Defendants in a timely manner. (*See* Summons, DN 7).

Upon consideration of the five factors, the Court will exercise its discretion to permit England's claims against Perkins to go forward despite the failure of timely service. Perkins' motion will be denied on this basis.

### B. Federal Claims

#### 1. *Statute of Limitations*

England bases several of her federal claims on Incidents I, II, and III. (Compl. ¶¶ 86, 93, 94, 109, 111). In determining the applicable statute of limitations, "[f]ederal courts apply the single most analogous state personal injury statute of limitations to claims brought under 42 U.S.C. § 1983." *Clifton v. Sundquist*, 3 F. App'x 277, 279 (6th Cir. 2001) (citing *Wilson v. Garcia*, 471 U.S. 261, 276 (1985)). "The statute of limitations for a claim for relief under Section 1983 is governed by the state statute of limitations for personal injury claims." *Bowden v. City of Franklin*, 13 F. App'x 266, 272 (6th Cir. 2001) (citing *Wilson*, 471 U.S. at 267-68). For the state law claims and claims under 42 U.S.C. § 1983, Kentucky's relevant statute is KRS 413.140, which prescribes that any actions sounding in personal injury are to be brought within one year. *Bowden*, F. App'x

8

at 272.  The Russell County Defendants argue "[a] civil rights claim for relief accrues when the plaintiff knows or has reason to know of the injury that is the basis of his action."  (Sheriff's Dep't's Mem. Supp. Mot. Dismiss 6, DN 9-1 (quoting *Bowden*, 13 F. App'x at 273)).  To calculate when the period of limitations begins to run, however, Fed. R. Civ. P. 6 prescribes the relevant method of counting unless the governing statute requires otherwise, which KRS 413.140 does not for personal injury claims.  Fed. R. Civ. P. 6(a)(1)(A) states that time periods should be calculated by "exclud[ing] the day of the event that triggers the period . . . ."  Incident I and II (allegedly occurring on June 16, 2019, and December 19, 2019, respectively) are clearly time-barred, each having occurred well over a year prior to filing the Complaint on March 17, 2021. (Compl. ¶¶ 17, 23, 33).  Incident III, however, will be permitted to proceed.  Incident III is alleged to have occurred on March 17, 2020.  (Compl. ¶ 33).  According to the Federal Rules of Civil Procedure and Kentucky state law, the statute of limitations would begin to run the following day.  Therefore, the Complaint, which was filed on March 17, 2021, is not time-barred with respect to Incident III.

The Russell County Defendants and Perkins argue that the unreasonable search and seizure, and excessive force claims are barred against them because they are based on Incidents II and III. (Perkins' Mem. Supp. Mot. Dismiss 7-9; Sheriff's Dep't's Mem. Supp. Mot. Dismiss 6-7).  As discussed above, England's excessive force and unreasonable search and seizure claims are time barred with respect to Incident II, but she may proceed regarding claims related to Incident III.

England asserts that equitable tolling and the continuing violation doctrine should apply to cure any time-barred claims, but has not pleaded facts which warrant either form of relief.  "In order to satisfy the extraordinary circumstance prong [for equitable tolling] at this stage of the proceeding . . . , Plaintiff must present sufficient factual allegations . . . ."  *Rice v. Music Royalty Consulting, Inc.*, 397 F. Supp. 3d 996, 1013 (E.D. Mich. 2019) (citation omitted).  "The doctrine

of equitable tolling is applied sparingly by federal courts," and is typically used "only when a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond that litigant's control." *Vroman v. Brigano*, 346 F.3d 598, 604 (6th Cir. 2003) (internal quotation marks omitted) (internal citation omitted) (citation omitted). England has failed to plead facts indicating that her failure to timely assert claims relating to Incidents I and II occurred as a result of circumstances beyond her control.

Regarding the continuing violation doctrine, England asserts that the "continuing violation is occasioned by continual unlawful *acts*, not continual ill effects from an original violation." *Weis-Buy Servs., Inc. v. Paglia*, 411 F.3d 415, 423 (3d Cir. 2005) (citation omitted) (emphasis added). England has not, however, pointed to any allegations in the Complaint to support the application of the continuing violation doctrine. As a result, the statute of limitations was not tolled, and the claims based on Incidents I and II are time-barred.

### 2. Monell *Claim*

The Russell County Defendants allege that England has not stated a claim which would make Russell County liable for the alleged constitutional violations by its Sheriff and deputies in their official capacities. (Sheriff's Dep't's Mem. Supp. Mot. Dismiss 5, Perkins' Mem. Supp. Mot. Dismiss 4-5). "[I]n *Monell* and subsequent cases, we have required a plaintiff seeking to impose liability on a municipality under § 1983 to identify a municipal 'policy' or 'custom' that caused the plaintiff's injury." *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 403 (1997) (citations omitted); *see also Monell v. City Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 698 (1978). "[A]n act performed pursuant to a 'custom' that has not been formally approved by an appropriate decisionmaker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law." *Brown*, 520 U.S. at 404. Count IV

of the Complaint asserts a claim under 42 U.S.C § 1983 based on the allegation that an "official policy or custom deprive[d] an individual of its rights protected under the Constitution." (Compl. ¶ 114).

To establish municipal liability, a plaintiff "must (1) identify the municipal policy or custom, (2) connect the policy to the municipality, and (3) show that his particular injury was incurred due to execution of that policy." *Alkire v. Irving*, 330 F.3d 802, 815 (6th Cir. 2003) (citing *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993)). A plaintiff may demonstrate the existence of an illegal policy or custom by showing: "(1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations." *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013) (citation omitted). There must be a causal link between a municipal policy or custom and the alleged constitutional deprivation to hold a municipality responsible. *Monell*, 436 U.S. at 691-92; *Deaton v. Montgomery Cnty.*, 989 F.2d 885, 889 (6th Cir. 1993).

The Complaint asserts that Polston, as Russell County Sherriff, had a duty to "properly train, supervise, and discipline their employees and agents." (Compl. ¶ 116). England claims that Polston breached that duty through an unofficial policy of deliberate indifference to issues of excessive force and improper search and seizure by: "[i]mproperly training, authorizing, encouraging or directing officers on proper use of force, searches and seizures of persons and things"; "[f]ailing to investigate allegations of excessive force, improper search and seizures"; and "[f]ailing to discipline officers for violations of policy related to excessive force, search and seizure." (Compl. ¶¶ 115-17). England alleges this "condoned misconduct" is "tacitly or overtly

sanctioned" and "the failure to end this policy, pattern of practice, or custom was a proximate cause to the injuries suffered by Plaintiff." (Compl. ¶¶ 118-21). As the Supreme Court has noted, "the inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton v. Harris*, 489 U.S. 378, 388 (1989) Further, "the identified deficiency in the training program must be closely related to the ultimate injury." *Id.*

In this instance, England has alleged excessive force, and unlawful search and seizure against the Russell County Sheriff's Deputies in their official capacities, thereby pleading a causal link between the failure to train and the harm alleged. (Compl. ¶¶ 80-87, 104-11). Reading the Complaint liberally, as this Court is required to do, England has alleged a policy of Russell County, through Polston as the decisionmaker, related to the alleged constitutional violations of failing to properly train the named Sheriff's Deputies in a manner amounting to deliberate indifference.[1]

### 3. *Unreasonable Search and Seizure.*

England does not respond to Defendants' argument regarding her failure to properly allege a claim for unreasonable search and seizure under the Fourth Amendment and has therefore waived the claim. (Perkins' Mem. Supp. Mot. Dismiss 9-12, Sheriff's Dep't's Mem. Supp. Mot. Dismiss 8-10); *Butler v. City of Cincinnati*, No. 1:17-CV-604, 2020 U.S. Dist. LEXIS 132032, at *29 (S.D. Ohio July 27, 2020) ("Plaintiff does not respond to this argument, and the Court will construe his silence as a concession." (internal citation omitted)). This claim will be dismissed.

---

[1] England attached multiple documents to her Response which are intended to set out her efforts in uncovering RCSD's policy, but consideration of these affidavits would be inappropriate at the motion to dismiss stage as the documents are not attached to nor referenced in the Complaint.

12

### 4. *Cruel and Unusual Punishment*

Again, Plaintiff has waived the right to pursue her Eight Amendment claim by failing to respond to the Russell County Defendants' argument in her response brief. Even considering the argument, England's claim for cruel and unusual punishment is wholly inapplicable. As Defendants point out:

> Eighth Amendment scrutiny is appropriate only after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions. . . . [T]he State does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt in accordance with due process of law.

*City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983) (alteration in original) (citation omitted); (Sheriff's Dep't's Mem. Supp. Mot. Dismiss 13, Perkins' Mem. Supp. Mot. Dismiss 18). There has been no allegation by the Plaintiff of a formal adjudication of guilt in this matter or a criminal conviction and therefore a claim under the Eighth Amendment does not apply.

### 5. *Declaratory Judgment*

The Russell County Defendants contend that England is not entitled to declaratory relief, as requested in the Complaint. (Sheriff's Dep't's Mem. Supp. Mot. Dismiss 15-17, Perkins' Mem. Supp. Mot. Dismiss 19-21). Under the Declaratory Judgment Act, "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). Further, the Act is "an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant." *Pub. Serv. Comm'n of Utah v. Wycoff Co.*, 344 U.S. 237, 241 (1952). The district court "should not be required to decide legal issues and give advisory relief unnecessarily." *Grand Trunk W. R. Co. v. Consol. Rail Corp.*, 746 F.2d 323, 326 (6th Cir. 1984).

In the Complaint, England states that "[she] seeks declaratory judgment that Defendants' policies, pattern of practices, customs, lack of supervision, failure to train, acts, and omissions described herein violate the Fourth and Eighth Amendments to the U.S. Constitution." (Compl. ¶ 130). In opposing the motion, England argues that "the declaratory relief should be awarded because Defendants are prone to continue their actions. Notably, the fact that Defendants committed the alleged acts more than one (1) time is enough reason . . . to grant declaratory relief to prevent any prospective future violations of plaintiff's rights." (Pl.'s Resp. Defs.' Mots. Dismiss 7).

In moving to dismiss this claim, the Russell County Defendants contend that the court should apply the five-factor test outlined in *Grand Trunk*, 746 F.2d at 326 to determine whether this Court should exercise jurisdiction over a request for declaratory judgment. (Sheriff's Dep't's Mem. Supp. Mot. Dismiss 15-17, Perkins' Mem. Supp. Mot. Dismiss 19-21). The factors outline that when considering declaratory relief, the court should consider:

> (1) whether the declaratory action would settle the controversy; (2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue; (3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for res judicata;" (4) whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and (5) whether there is an alternative remedy which is better or more effective.

*Grand Trunk*, 746 F.2d at 326 (citation omitted). Before considering the factors, however, jurisdictional requirements must be met. *Larry E. Parrish, P.C. v. Bennett*, 989 F.3d 452, 457 (6th Cir. 2021). The plaintiff "must present a justiciable case or controversy under Article III." *Hemlock Semiconductor Corp. v. Kyocera Corp.*, 747 F. App'x 285, 292 (6th Cir. 2018) (citation omitted). The plaintiff "must demonstrate that the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient

14

immediacy and reality to warrant the issuance of a declaratory judgment." *Id.* (internal quotation marks omitted) (citation omitted). The Sixth Circuit in *Bennett* found that there was no need to discuss the *Grand Trunk* factors, where:

> [T]he complaint failed to present a justiciable case or controversy because plaintiff requested a ruling only on whether the past actions of defendants were right or wrong, which could not affect the present relationship between the parties. In other words, plaintiff sought only an advisory opinion from the district court as to whether its constitutional rights had been violated.

*Bennett*, 989 F.3d at 457. England asks the Court to declare that the Defendants' actions are unconstitutional. (Compl. ¶¶ 129-30). Federal courts "are not in the business of pronouncing that past actions which have no demonstrable continuing effect were right or wrong." *Spencer v. Kemna*, 523 U.S. 1, 18 (1998). While England asserts that she has previously been subject to alleged wrongdoing by the Defendants and the wrongdoing is likely to reoccur, for Article III standing purposes, "the capable-of-repetition doctrine applies only in exceptional situations, and generally only where the named plaintiff can make a reasonable showing that [s]he will again be subjected to the alleged illegality." *City of Los Angeles v. Lyons*, 461 U.S. 95, 109 (1983) (citation omitted). Further, "[the plaintiff's] assertion that [s]he may again be subject to an [illegal act] does not create the actual controversy that must exist for a declaratory judgment to be entered." *Id.* at 104. England alleged five discrete incidents over an eighteen-month period for which she is allowed to seek relief. The separate occurrences complained of are not, however, alleged to be part of an ongoing controversy and as a result, the court declines to exercise jurisdiction over England's claim for declaratory relief, which is therefore dismissed.

### 6. *State Law Claims*

England has not responded to Defendants' arguments for the dismissal of her state law claims of intentional infliction of emotional distress, assault and battery, false arrest, and false

15

imprisonment set forth in Count II.  (Perkins' Mem. Supp. Mot. Dismiss 12-18; Sheriff's Dep't's Mem. Supp. Mot. Dismiss 9-12).  England has thus waived her right to challenge the dismissal of those claims.  *Butler*, 2020 U.S. Dist. LEXIS 132032, at *29.  England's state law claims are therefore dismissed.

V.     <u>**CONCLUSION**</u>

For the foregoing reasons, **IT IS HEREBY ORDERED** that Defendants' Motions to Dismiss (DN 9, DN 11) are **GRANTED IN PART** and **DENIED IN PART**.  The claims arising from Incidents I and II are time-barred.  Plaintiff's claims for intentional infliction of emotional distress, assault, battery, and false arrest, and false imprisonment, Fourth and Eighth Amendment claims, and declaratory judgment are **DISMISSED WITH PREJUDICE.**

Greg N. Stivers, Chief Judge<br>United States District Court<br>June 17, 2022

cc:     counsel of record